# United States District Court
### for the
### Western District of New York

**United States of America**

v.

_____ and **YONG CHEN**
_____
*Defendants*

Case No. 24-mj-1077
(FILED UNDER SEAL)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

### COUNT ONE

Beginning in or about May 2022, and continuing until on or about September 21, 2022, in the Western District of New York, and elsewhere, the defendants, _____ and **YONG CHEN**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to commit the following offense, that is, to import into the United States from a place outside thereof, that is, Canada, 3,4-Methylenedioxymethamphetamine Hydrochloride (MDMA), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(3), all in violation of Title 21, United States Code, Section 963.

### COUNT TWO

On or about September 21, 2022, in the Western District of New York, and elsewhere, the defendants, _____ and **YONG CHEN**, did knowingly import into the United States from a place outside thereof, that is, Canada, 3,4-Methylenedioxymethamphetamine Hydrochloride (MDMA), a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 952(a), 960(a)(1), and 960(b)(3), and Title 18, United States Code, Section 2.

### COUNT THREE

Beginning in or about May 2022, and continuing until on or about September 21, 2022, in the Western District of New York, and elsewhere, the defendants, _____ and **YONG CHEN**, did knowingly, willfully, and unlawfully combine, conspire, and agree with others, known and unknown, to possess with intent to distribute, 3,4-Methylenedioxymethamphetamine Hydrochloride (MDMA), a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), all in violation of Title 21, United States Code, Section 846.

### COUNT FOUR

On or about September 21, 2022, in the Western District of New York, the defendants, _____ and **YONG CHEN**, did knowingly and intentionally possess with intent to distribute 3,4-Methylenedioxymethamphetamine Hydrochloride (MDMA), a Schedule I controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2.

This Criminal Complaint is based on these facts:

☒ Continued on the attached sheet.

TIMOTHY C CARROLL
Digitally signed by TIMOTHY C CARROLL
Date: 2024.04.04 12:25:37 -04'00'

*Complainant's signature*

TIMOTHY CARROLL
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS
*Printed name and title*

*Judge's signature*

HONORABLE JEREMIAH J. MCCARTHY
UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

Sworn to and signed telephonically.

Date: April 4, 2024

City and State: Buffalo, New York

2

## AFFIDAVIT IN SUPPORT OF APPLICATION
## OF A SEARCH WARRANT

STATE OF NEW YORK )
COUNTY OF ERIE      )   SS:
CITY OF BUFFALO    )

I, **Timothy Carroll,** Special Agent of Homeland Security Investigations, Department of Homeland Security, having been duly sworn, states as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent with the U.S. Department of Homeland Security, Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), Buffalo, New York, and have been so employed in that capacity since September 2019. Prior to employment with HSI, I was employed by U.S. Customs and Border Protection (CBP) in Buffalo, New York, and assigned to the Homeland Security Investigations – Border Enforcement Security Taskforce (BEST) as a Task Force Officer (TFO). Prior to employment with CBP, I was employed by the United States Border Patrol (USBP) as a Border Patrol Agent. My duties as a USBP Agent consisted of line watch operations in the Calexico, California area of responsibility in order to stop the illegal entry of persons and substances into the United States.

2. As an HSI Special Agent, I am currently assigned to BEST, an HSI sponsored law enforcement task force comprised of local, state, federal, and Canadian law enforcement

officers co-located in Buffalo, New York, and tasked with combatting transnational criminal organizations (TCOs) exploiting vulnerabilities of the shared international border between the United States and Canada. As such, I am a law enforcement officer of the United States, within the meaning of Title 18, United States Code, Section 115(c)(1) of who is "authorized by law or by Government agency to engage in or supervise the prevention, detection, investigation or prosecution of any violation of Federal criminal law."

3. As an HSI Special Agent, I attended the Federal Law Enforcement Training Center and completed the Criminal Investigator Training Program and HSI Special Agent Training. During this training, I received detailed training, both academic and practical application, in the areas of informant handling/debriefing, drug packaging, pricing, importation, and trafficking/smuggling methods. In addition, I received both academic and practical application training in surveillance and counter surveillance techniques/methods. I received legal instruction in federal U.S. customs and immigration laws, preparing affidavits, Fourth Amendment searches and seizures, the Federal Rules of Evidence, and the execution of search warrants.

4. Through my training and experience, I have become familiar with the methods of operations and communications typically utilized by individuals involved in both human and contraband smuggling and trafficking. Based on my experience, I know that with the advancement in Small Unmanned Aircraft Systems (SUAS or "drones") they have become increasingly popular for narcotics traffickers to move their contraband.

5. As part of my current duties as an HSI Special Agent on BEST, I conduct investigations into cross-border human and contraband smuggling and trafficking. These investigations routinely take place at international port of entries in the Western New York area as well as locations along the Upper/Lower Niagara River, Lake Ontario, and Lake Erie. As part of these duties, I have become involved in an investigation of suspected violation of Title 21, United States Code.

6. I make this affidavit in support of a criminal complaint charging ▮▮▮▮▮ ▮▮▮▮▮ and **YONG CHEN**, with violations of Title 21, United States Code, Section 963 (conspiracy to import a controlled substance); Title 21, United States Code, Sections 952(a), 960(a)(1), 960(b)(3), and Title 18, United States Code, Section 2 (importation of a controlled substance); Title 21, United States Code, Section 846 (narcotics conspiracy); and Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(C), and Title 18, United States Code, Section 2 (possession with intent to distribute a controlled substance) (hereinafter, the "Enumerated Offenses").

7. The statements contained in this affidavit are based upon my involvement in this investigation, personal knowledge and observation, my training and experience, my review of official records and documents related to this investigation, and upon information provided to me by other HSI Special Agents, Drug Enforcement Administration (DEA) Special Agents, USBP Agents, and other law enforcement officers. Unless specifically indicated otherwise, all conversations described in this affidavit are relayed in sum and substance and in part only.

3

8.      Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts I believe are necessary to establish probable cause to believe that the defendant did knowingly violate the Enumerated Offenses.

## PROBABLE CAUSE

9.      On September 21, 2022, at approximately 1:30 a.m., USBP Buffalo Sector Communications advised of a drone launch in the area of Youngstown, New York. The drone was monitored via electronic surveillance and its flight was determined to have originated at a residence in Youngstown, New York. The drone then travelled across the Lower Niagara River into Ontario, Canada. The drone made landing in Niagara-on-the-Lake, Ontario, Canada, near the "On Seven Estates Winery," and, shortly thereafter, returning to its originating launch location at a residence in Youngstown, New York.

10.     Law enforcement responded to the residence and observed the drone hovering in the back yard of 4240 Wolf Run Drive, Youngstown, New York. The drone, which was operating without navigation lights, had an attached package hanging from the chassis. The drone dropped altitude and made landfall near an individual later identified as Edvin Yug Deng.[1]

---

[1] Edvin Yug Deng was charged with, and plead guilty to, a violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3) (importation of a controlled substance). *See* 23-CR-15.

11. Upon observing the drone land in the backyard of 4240 Wolf Run Drive, law enforcement made entry into the back yard and announced themselves as "police" and ordered Deng and another subject not to move. Both Deng and the additional subject ran into the residence, where Deng then surrendered and was detained. The additional subject absconded.

12. Once law enforcement deemed that were no unaccounted-for individuals within the residence, the residence was secured, and law enforcement did not re-enter the residence until a warrant was acquired.

13. Shortly thereafter, the Niagara County Sheriff's Department received a call from an individual requesting medical attention a short distance away from 4240 Wolf Run Drive. The individual stated that they were having shortness of breath, and an ambulance was dispatched to the location. Upon arrival, Niagara County Sheriff's Office (NCSO) Deputies observed two Asian males exit a nearby wood line. The individuals were later identified as ▮▮▮▮▮ and **YONG CHEN**. ▮▮▮▮▮ matched the physical description of the individual observed in the backyard of 4240 Wolf Run Drive with Deng. Both ▮▮▮▮▮ and **YONG CHEN** were then transported to 4240 Wolf Run Drive. While being treated by medical personnel, **YONG CHEN** admitted that he was staying at 4240 Wolf Run Drive. Shortly thereafter, ▮▮▮▮▮, **YONG CHEN**, and Deng were transported to the Niagara Falls Border Patrol Station for interviews and processing.

14. The package attached to the drone was removed and transported to the Niagara Falls Border Patrol Station for analysis. There, USBP K9 "Shanti" alerted and indicated to the presence of narcotics within the package. The package was then disassembled revealing three vacuum sealed bags that contained a purple crystalline substance. The crystalline substance was analyzed by the DEA Northwest Laboratory and confirmed to be 2990.6 grams of 3,4-Methylenedioxymethamphetamine (MDMA).

15. Based on my training and experience, this amount of MDMA is consistent with that of a narcotics trafficker and not of a personal user. Those who acquire MDMA for personal use do not typically buy MDMA in the kilogram amount. Additionally, personal users of MDMA, or other narcotics, are not known to import the drugs themselves using highly sophisticated methods such as a drone. This behavior is consistent with individuals that are importing and distributing narcotics.

16. After acquiring a federal search warrant, HSI Special Agents reentered 4240 Wolf Run Drive. The residence was observed to be barely furnished, with only mattresses on the floor and almost no other furniture. The residence also contained few comfort items and no clothing to suggest individuals were using 4240 Wolf Run Drive as a primary residence.

17. During the search, numerous commercial grade drones, controllers, and electronics were observed within the residence. Additionally, rolls of paracord were found on the kitchen counter that were consistent to the cord holding the package of MDMA to the drone recovered in the backyard. Also found within the residence were additional cellular

telephones, miscellaneous documents, including items belonging to both ▆▆▆▆▆▆▆ and **YONG CHEN**, and a video hard drive containing the residence's security camera footage.

18.  The video hard drive containing the home's security camera footage was subsequently reviewed and ▆▆▆▆▆▆▆ and **YONG CHEN** can both be seen standing outside the front door of the residence approximately half an hour before the September 21, 2022, drone launch was picked up by electronic surveillance. ▆▆▆▆▆▆▆ can be seen holding what appears to be a drone controller in his hands while talking to **YONG CHEN**. Later in the video, at the approximate time that law enforcement entered the backyard of 4240 Wolf Run Drive, ▆▆▆▆▆▆▆ and **YONG CHEN** can be observed running out of the residence via the residence's front door.

19.  While 4240 Wolf Run Drive was under the control of HSI during the execution of the search warrant, a package was delivered addressed to: "CHEN YONG, 4240 Wolf Run Drive, Youngstown, NY 14174." Upon executing the search warrant, the package was opened and found to contain a DJI Matrice M300 drone. This is the exact same model of drone that was observed/recovered from the backyard of 4240 Wolf Run drive with the package containing MDMA.

20.  All of the drones recovered from 4240 Wolf Run Drive were analyzed by personnel from U.S. Customs and Border Protection (CBP). Information contained within the drones was successfully extracted. Two of the drones contained data indicating that they had conducted five cross-border flights into Canada and back prior to September 21, 2022.

The flights all originated and concluded at, or extremely close to, 4240 Wolf Run Drive. The flights occurred on May 10, May 11, May 18, and July 6, 2022. Two separate cross border flights occurred on July 6, 2022.

21. It is the belief of Your Affiant, based on my training, experience, and knowledge of this case and others, that the cross-border flights that occurred prior to September 21, 2022, were conducted to test drone's capabilities and trouble shoot any issues that might occur before unitizing the drone on September 21, 2022, to transport the MDMA.

22. HSI Buffalo subpoenaed commercial flight records relating to ▬▬▬▬▬. Regarding the May 10 and May 11, 2022, cross-border drone flights, subpoena results show that on May 8, 2022, ▬▬▬▬▬ traveled from Los Angeles International Airport to Buffalo Niagara International Airport. ▬▬▬▬▬ then traveled from John F. Kennedy International Airport to Los Angeles International Airport on May 13, 2022. This travel pattern suggests to Your Affiant that ▬▬▬▬▬ flew into Buffalo, New York, to conduct the cross-border drone flights on May 10, 2022, and May 11, 2022, and then flew back to his residence in California via John F. Kennedy International Airport after the conclusion of the flights.

23. Regarding the May 18, 2022, cross-border drone flight, subpoena results show that on May 16, 2022, ▬▬▬▬▬ traveled from Los Angeles International Airport to Buffalo Niagara International Airport. ▬▬▬▬▬ then traveled from Buffalo Niagara International Airport to Los Angeles International Airport on May 19, 2022. This travel

pattern suggests to Your Affiant that ▆▆▆▆▆▆▆▆ flew into Buffalo, New York, to conduct the cross-border drone flight on May 18, 2022, and then flew back to his residence in California after the conclusion of the flight.

24. Regarding the two cross-border drone flights on July 6, 2022, subpoena results show that on July 4, 2022, ▆▆▆▆▆▆▆▆ traveled from Los Angeles International Airport to Buffalo Niagara International Airport. ▆▆▆▆▆▆▆▆ then traveled from Buffalo Niagara International Airport to Los Angeles International Airport on July 7, 2022. This travel pattern suggests to Your Affiant that ▆▆▆▆▆▆▆▆ flew into Buffalo, New York, to conduct the cross-border drone flights on July 6, 2022, and then flew back to his residence in California after the conclusion of the flights.

25. During the investigation, HSI received a historical cell site search warrant for ▆▆▆▆▆▆▆▆ cell phone. While records were not retained pursuant to Verizon Wireless's data retention policy for the May 10 and May 11, 2022, cross-border drone flights, cell tower records place ▆▆▆▆▆▆▆▆ cell phone in the Niagara County, New York area during the May 18 and July 6, 2022, cross-border drone flights.

26. ▆▆▆▆▆▆▆▆ is not known to have any ties to the Buffalo/Youngstown, New York, area that would induce this type of travel.

27. HSI Buffalo also subpoenaed commercial flight records relating to **YONG CHEN**. Regarding the May 10 and May 11, 2022, cross-border drone flights, subpoena results

9

show that on May 8, 2022, **YONG CHEN** traveled from LaGuardia Airport to Buffalo Niagara International Airport. **YONG CHEN** then traveled from Buffalo Niagara to LaGuardia on May 12, 2022. This travel pattern suggests to Your Affiant that **YONG CHEN** flew into Buffalo, New York, to conduct the cross-border drone flights on May 10 May 11, 2022, and then flew back to his residence in Flushing, New York, after the conclusion of the flights.

28. Regarding the May 18, 2022, cross-border drone flight, subpoena results show that on May 15, 2022, **YONG CHEN** traveled from John F. Kennedy International Airport to Buffalo Niagara International Airport. **YONG CHEN** then traveled from Buffalo Niagara International Airport to LaGuardia Airport on May 19, 2022. This travel pattern suggests to Your Affiant that **YONG CHEN** flew into Buffalo, New York, to conduct the cross-border drone flight on May 18, 2022, and then flew back to his residence in Flushing, New York, after the conclusion of the flight.

29. During the investigation, HSI received a historical cell site search warrant for **YONG CHEN's** cell phone. Cell tower records place **YONG CHEN**'s cell phone in the Niagara County, New York area during the May 10, May 11, May 18, and July 6, 2022, cross-border drone flights. Additionally, based on cellular tower data records from on and around July 6, 2022, it appears to Your Affiant that **YONG CHEN** travelled to and from the Buffalo New York area around that time.

30. **YONG CHEN** is not known to have any ties to the Buffalo/Youngstown, New York, area that would induce this type of travel.

31. Subpoenaed call detail records regarding a cell phone subscribed to ▓▓▓▓▓▓, show that on September 21, 2022—the night of the MDMA seizure at 4240 Wolf Run Drive— at or around the time that the drone was engaged in its cross-border flight, there was a thirty-one (31) minute outgoing call originating from ▓▓▓▓▓▓ phone to a number with a Canadian area code.

32. Law enforcement has conducted open-source records checks on 4240 Wolf Run Drive, Youngstown, New York. Record checks show that the property was last sold on April 21, 2022, for $630,000, approximately one month before the first cross-border drone flight from the residence took place. Law enforcement contacted the previous owner of the property who voluntarily provided the closing statement for the sale transaction. The purchaser is listed as "Y & L Beauty Nail Inc." Open-source record checks of Y & L Beauty Nail Inc. show it as a beauty salon located at 902 Johnson Ave, Ronkonkoma, New York. The acknowledgement section lists a signature for the buyer. The handwriting is not clear; however, the signature appears to read "Li Chen." **YONG CHEN** stated to law enforcement during a *Mirandized* interview on September 21, 2022, that he works at Y & L Beauty Nail Inc. Y & L Beauty Nail Inc. is also listed as his employer on his passport application. Based on immigration and customs records, it appears that Li Chen is **YONG CHEN's** sister.

11

**WEREFORE**, based upon the foregoing, Your Affiant respectfully submits that there is probable cause to believe that ▮▮▮▮▮▮▮▮ and **YONG CHEN**, violated the Enumerated Offenses.  Accordingly, I respectfully request issuance of the attached Criminal Complaint, and that the complaint and supporting affidavit remain under seal until further order of the Court.

TIMOTHY C CARROLL
Digitally signed by TIMOTHY C CARROLL
Date: 2024.04.04 12:24:25 -04'00'

TIMOTHY CARROLL
Special Agent
Homeland Security Investigations

Subscribed and sworn to telephonically
this 4th day of April, 2024.

HONORABLE JEREMIAH J. MCCARTHY
United States Magistrate Judge

12